UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS INC, | No. C 09-1488 PJH  (JL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT (Docket # 9)** |
| GABRIEL CANEDO, et al., | |
| Defendants. | |

**I.   Introduction**

Plaintiff's motion for default judgment was referred by the district court (Hon. Phyllis J. Hamilton) pursuant to 28 U.S.C. §636(b). This Court finds the matter to be suitable for submission without oral argument pursuant to Civil Local Rule 7-1(b). Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the "Sworn Enemies," Floyd Mayweather, Jr. v. Zab Judah Welterweight Championship Fight Program, telecast nationwide on Saturday, April 8, 2006. This Program included the main event (between Floyd Mayweather, Jr. and Zab Judah) along with undercard (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to as the "Program." (Declaration of Plaintiff's owner, Joseph Gagliardi)

Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout the United States and its territories, wherein it granted limited public exhibition rights to these entities (sublicensees) for the benefit and entertainment of the patrons within their respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.). The interstate transmission of the Plaintiff's Program was encrypted and made available only to Plaintiff's customers (commercial locations which paid Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the Program). The typical license fee for an establishment such as Defendants' which is licensed for no more than 50 occupants, would have been $1,200.00. (*Id.*)

On April 8, 2006 an investigator, Gary Gravelyn, observed the unlawful exhibition of Plaintiff's Program at the Defendants' commercial establishment. The investigator's observations were later documented in a sworn affidavit now before this Court. (See Declaration of Affiant Gary Gravelyn.) Plaintiff alleges only this one violation by Defendants and under the statutes invoked below, this one violation would subject Defendants to statutory penalties in a range from $1,000 to $10,000. Plaintiff in this case requests entry of judgment for enhanced statutory damages for at least triple the minimum, or for an amount in a range from $50,000 to $100,000 for this single violation.

On April 6, 2009, Plaintiff filed suit against Gabriel Canedo, individually and d/b/a Lara's Bar (hereinafter "Defendants") after Plaintiff's efforts to resolve this matter informally failed. The thrust of Plaintiff's Complaint is that Defendants, and their employees and agents, unlawfully intercepted and intentionally exhibited the Program at the Defendants' establishment for the purpose of direct or indirect commercial advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as amended, as well as Title 47 U.S.C. §553. Plaintiff's complaint also includes a pendant common-law claim of Conversion.

Neither the Defendants nor anyone acting on the Defendants' behalf filed an Answer or any other responsive pleading to Plaintiff's duly served complaint. Accordingly, on June 12, 2009, following Plaintiff's Request, the Court entered default against the Defendants in

1  this action. Plaintiff respectfully requests this Court to enter judgment against the
2  Defendants.
3      Plaintiff argues that, as a result of theft by the Defendants and others, Plaintiff has
4  lost and will continue to lose its legitimate commercial customers which are unwilling and
5  financially unable to compete with those unauthorized locations, such as LARA'S BAR,
6  which exhibit sports and other closed-circuit programming in an unlicensed manner.
7  Because these unauthorized commercial establishments offer programming to their patrons
8  for no fee (or for a fee which is less than the authorized establishments charge), the
9  legitimate commercial establishments cannot attract paying customers to offset their
10 sizeable investments in commercial licensing and event promotion, and as a result, and
11 incur substantial financial loss. Plaintiff also contends such practices eliminate the prospect
12 that establishments like LARA's will continue purchasing commercial exhibition licenses
13 from the Plaintiff in the future. Plaintiff presents no evidence that this has actually
14 happened.
15     Plaintiff contends that theft of closed-circuit broadcasts, such as the Program, by
16 unauthorized commercial establishments, such as LARA'S BAR, adversely impacts both
17 Plaintiff and its lawful customers. Plaintiff pays substantial fees to the promoters of the
18 events to obtain the exhibition rights to sublicense the broadcast of closed-circuit
19 programming to authorized commercial establishments. Plaintiff's exclusive source of
20 revenue is the sublicense fees which it charges to authorized commercial establishments
21 for the right to broadcast closed-circuit boxing and entertainment programming such as the
22 Program. The corrosive effect of commercial signal interception permanently destroys
23 Plaintiff's lawful customer base. *Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376,
24 381 (E.D. Ohio 1983). Again, Plaintiff presents no evidence in support of this contention,
25 other than the declaration of its owner, Joseph Gagliardi, which contains no dollar amounts
26 or percentages of lost profits.
27     Plaintiff also argues that, as a direct and proximate result of piracy, Plaintiff suffers
28 severe damage to its goodwill and professional reputation, and has invariably lost its right

Case 4:09-cv-01488-PJH   Document 15   Filed 09/14/09   Page 4 of 15

and ability to control and receive fees for transmission of the Program. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 640 F.Supp. 1159, 1161 (D.Mass., 1986) When negotiating sublicense fees, Plaintiff represents to commercial establishments that it exercises supervision over the commercial distribution of its programming. When an unauthorized commercial establishment intercepts, receives, and broadcasts closed-circuit programming, such as the Program, Plaintiff's reputation and goodwill allegedly suffers irreparable harm with existing and prospective commercial customers from what appears to be a misrepresentation of its ability to supervise its programming.  Plaintiff further alleges that ultimately, piracy devaluates the product being lawfully developed, marketed, licensed, or sold to the detriment and injury of all. Plaintiff asks this Court to find that it should be awarded just and substantial compensation from the Defendants for these losses suffered. It asserts that modest awards of statutory damages are insufficient to accomplish those goals and that damages calculated on the ill-gotten gains are also insufficient. Rather, the success of Plaintiff's small family business concern depends upon the willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming and the courts' commitment to deal fairly but firmly with the rising tide of theft of Plaintiff's intellectual property.

Plaintiff presents no evidence of loss of reputation or any other monetary or other harm suffered from Defendants' alleged theft of Plaintiff's Program.

Plaintiff concedes that it may be unconventional to award the Plaintiff the amount of damages it now prays for from a defendant in a default setting. He argues that piracy is nothing less than outright theft and a firm judicial hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

Plaintiff requests that this Court enter judgment in its favor and that damages be awarded to it, as follows:

   a. Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii): $ 50,000.00

   b. Violation Title 47 U.S.C. 553 (b)(2) and (c)(2)(c): $ 50,000.00

   c. Tort of Conversion: $ 1,200.00

C-09-1488 REPORT & RECOMMENDATION                                                                Page 4 of  15

Total Amount of Requested Judgment: $ 101,200.00

## II. Analysis

### A. Plaintiff argues that it is entitled to enhanced statutory damages.

#### 1. In the event of a defendant's default, the Court must accept Plaintiff's allegations as to the defendant's liability.

Once a default judgment is entered, it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect between the parties as a judgment rendered after a trial on the merits. Wright, Miller & Kane, Federal Practice and Procedures, §2684, p. 4-19-20. Plaintiff argues that Defendants' default serves as an admission of Plaintiff's well-pled allegations of fact. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorneys' fees, and costs to which Plaintiff is entitled from the Defendants for the unauthorized exhibition of Plaintiff's Program. This Court, however, is not obliged to accept Plaintiff's allegations as to its damages or the appropriateness of a particular award.

On entry of default, while the complaint's factual allegations regarding liability are taken as true, allegations regarding the amount of damages must be proven. Fed.Rules Civ.Proc.Rule 55, 28 U.S.C.A . Federal Civil Procedure 170A 2421 170A Federal Civil Procedure 170AXVII. Entry of default judgment is governed by federal civil rule governing default and is left to the trial court's sound discretion. Fed.Rules Civ.Proc.Rule 55, 28 U.S.C.A . A defendant's default does not automatically entitle a plaintiff to a court-ordered judgment, since granting or denying default judgment relief is entirely within court's discretion. Fed.Rules Civ.Proc.Rule 55, 28 U.S.C.A .

Title 47 U.S.C. Section 605 protects companies such as the Plaintiff against the theft of its proprietary communications such as the Program. *National Subscription Television v. S & H TV*, 644 F.2d 820 (9th Cir. 1981). Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system. Title 47 U.S.C. §553 was designed to

provide a remedial scheme for unauthorized reception of cable communication. *Home Box Office v. Gee-Co Inc.*, 838 F.Supp. 436 (E.D. Mo. 1993). In this case, Plaintiff's investigator testified in his statement that Lara's Bar had no satellite dish; therefore, section 605 does not apply. He testified that he did not see a cable box, but in the absence of a satellite dish, and in light of the statement of Plaintiff's owner, Joseph Gagliardi, that the Program was not available on commercial stations, the Court finds that Defendants must have obtained the Program via cable.

**2      Plaintiff is entitled to either statutory or actual damages.**

A party aggrieved under the Statutes may, at its discretion, recover either actual or statutory damages. §553(c)(3)(A). Statutory damages may be awarded up to $10,000.00 for each violation. §553(c)(3)(A)(ii). Additionally, if this Court determines the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may award enhanced damages of up to $50,000.00 under §553(c)(3)(B)(III).

Plaintiff contends that, as an aggrieved party under these Statutes, (see §553 (C)(1) and 605(D)(6)), Plaintiff is entitled to damages from the Defendants. LARA'S BAR is a commercial establishment, and could only lawfully obtain the Program if Plaintiff had contracted with Defendants for the rights to show the Program. However, this lawful approach was not taken. Therefore, Defendants must have undertaken specific wrongful actions to intercept or receive and broadcast the encrypted telecast. (See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court concurrently filed with this Memorandum (hereinafter "Plaintiff's Affidavit")). Since the Defendants must have committed wrongful acts in order to intercept, receive, and broadcast the Program, Plaintiff seeks substantial statutory damages from the Court in this action.

**3.      Statutory damages are appropriate where actual damages are difficult to prove.**

The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*,

United States District Court
For the Northern District of California

344 U.S. 228, 233 (1952). In the instant case, as more fully discussed infra, it would be impossible to calculate the full extent of the profits lost and the additional damages sustained by Plaintiff as a result of the Defendants' unlawful actions. Accordingly, it is appropriate for Plaintiff to elect to receive statutory damages.

In order to deter the unlawful use of communications such as the Program, Congress specifically designed the Statues to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7, 5577, 5658; *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To accomplish these goals, the statutes include severe penalties, both civil and criminal, for those who intercept, receive or broadcast protected communications. *Scott*, 783 F. Supp. at 281; § 553(b) and 605(e). Moreover Congress has equated a violation of the Statutes to theft of service. See 1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-43. In 1988, in an effort to further deter theft, Congress amended the Statutes to provide for more severe penalties for violations. *Id.* at 5657.

Plaintiff's Affidavit asserts that the Defendants' interception, receipt, and broadcast of the encrypted Program was not inadvertent. Both §553(c)(3)(C) and 605(e)(3)(C)(iii) provide for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section . . . .", but as stated by Congress, this type of situation occurs rarely:

> [i]t is not intended that this provision serve in any way as a defense to determination of liability under subsection (a), but rather only as a provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News. .84 Bd. Vol. 8, 4745, 4751. Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe impact of theft of various wire communications, including closed-circuit programming, such as the Program.

As stated in the House Bill:

"Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it".

Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News. .84 Bd. Vol. -6, 4655, 4720. Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices. *U.S. v. Scott,* 783 F.Supp. at 281 (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

In light of the above observations, as its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).

Section 553 deals with interception of commercial cable broadcasts and provides for damages, in pertinent part:

(1) Any person who willfully violates subsection (a)(1) of this section shall be fined not more than $1,000 or imprisoned for not more than 6 months, or both.
(2) Any person who violates subsection (a)(1) of this section willfully and for purposes of commercial advantage or private financial gain shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for the first such offense and shall be fined not more than $100,000 or imprisoned for not more than 5 years, or both, for any subsequent offense.
. . .
(2) The court may--

(A) grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section;

(B) award damages as described in paragraph (3); and

(C) direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(3)(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's

> gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.
>
> (B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.
>
> (C) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.

47 U.S.C.A. § 553; *Cable/Home Communication Corp. v. Network Production, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).

Plaintiff cites a case for the proposition that where both statutes have been violated, some Ninth Circuit courts have chosen to award damages pursuant only to §605(e)(3)(C)(i)(II). *Kingvision Pay-Per-View, Ltd. v. Ortega*, 2002 WL 31855367(N.D. Cal. 2002)(Judge Illston). In fact, Judge Illston in that case declined to award enhanced damages against a defaulting defendant:

> This Court declines to grant plaintiff's request for the statutory maximum. The allegations in a complaint regarding the monetary amount of damages that should be granted in a default judgment are not controlling, and "the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F.Supp. 1196, 1198 (N.D.Cal.2000). Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations and actual profit derived from the violation. *Id.*, at 1197-1198. Here there is no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation or that it actually profited from the violation. "Courts in this district have considered several cases involving pirating of closed-circuit sports broadcasts and, absent a showing of egregious wrongdoing, generally have awarded damages slightly over the statutory minimum." *Universal Sports Network v. Jimenez*, 2002 U.S. Dist. Lexis 17709, *3 (N.D.Cal.2002). Therefore the Court finds that an enhanced damage award is not warranted under the statute.

*Kingvision Pay Per View, Ltd. v. Ortega* 2002 WL 31855367, 2.

Section 605 deals with interception of satellite broadcasts and provides for damages, in pertinent part:

> (1) Any person who willfully violates subsection (a) of this section shall be fined not more than $2,000 or imprisoned for not more than 6 months, or both.

(2) Any person who violates subsection (a) of this section willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for the first such conviction and shall be fined not more than $100,000 or imprisoned for not more than 5 years, or both, for any subsequent conviction.

(3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

(B) The court–

(i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;

(ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C.A. § 605

In this case, Plaintiff's investigator testified that Lara's Bar had "no satellite dish," and therefore this Court finds that section 605 does not apply.

Nevertheless, Plaintiff asks this Court to take note that it is not unheard of for courts in this circuit to award damages pursuant to both statutes. *Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.,* 1996 WL 438789 (N.D. Cal. 1996) (Judge Wilken). This citation is to the outcome of a bench trial; the judgments against defaulting defendants were entered separately and Judge Wilken only ordered entry of judgment including damages under both statutes after making findings of fact and conclusions of law. That is not the situation here. This Court finds no justification in this case for awarding damages under both statutes. Plaintiff alleges that its Program was broadcast via "closed circuit television" (Application for Default Judgment at 2:15), which presumably was transmitted to Defendants' bar by cable, since there was no satellite dish. Plaintiff does not specify how the transmission was received by Defendants.

### 4. Certain factors favor enhanced damages.

To determine appropriate statutory awards, Ninth Circuit courts have considered many factors, and these factors often overlap with the factors for enhancing damages. *Universal Sports Network, Inc. v. Jimenez*, 2002 WL 31109707 (N.D. Cal. 2002)(Judge Conti) (considering intent to realize personal gain, repeat offenses, and the extent of the rebroadcast); *Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378 (N.D. Cal. 2000) (Judge Breyer) (considering repeat offenses, and awarding the statutory minimum only where one defendant was already out of business). Some courts will award the minimum amount automatically if the defendant profited less than $1,000.00 from pirating the fight. *Entertainment by J&J, Inc. v. Montecinos*, 2002 WL 1735384 (N.D. Cal. 2002) (Judge Chesney). Other courts will award anywhere from $2,000.00 to $10,000.00 as a starting point. *Joe Hand Promotions, Inc. v. Dailey,* 2003 WL 1342998 (N.D. Cal. 2003)(Judge Breyer); *Spencer Promotions Inc., Id.*

In this case, there is no evidence of any cover charge or admission charge which would have led to increased profit, or of any rebroadcast. In fact, Plaintiff's investigator testified that he paid no admission charge, no cover charge, presumably no minimum number of drinks, since he testified that he didn't order anything from the bartender and stayed only three minutes in the bar. There were 14 people there when he arrived and 16

when he left, in a bar that is limited to 50, and it was already the sixth round of the fight. The Court finds it unlikely that the number of customers increased dramatically after the investigator left.

Plaintiff asks this Court to find that the most important factor in assessing damages is the deterrent effect of the award. See generally Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7, 5577, 5658. Many courts factor deterrence into their damage enhancement. for Section 605(e)(3)(C)(ii), although it may be more appropriate for the statutory damage calculation pursuant to Section 605(e)(3)(C)(II). *Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215 (N.D. Cal. 1999)(Judge Walker) (awarding $5,000.00 to deter future transgressions).

Plaintiff draws the Court's attention to one case where the enhanced statutory damages were awarded, based solely on the deterrent effect, at more than three times what the transgressor would have paid to properly license the event. *Entertainment By J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002). As noted by the court in that case, requiring the Defendants "to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute." *Id.*

> In sum, based on the summary judgment record, including evidence of a single unauthorized transmission, the fact that Jenkins observed only seventy-five people in the establishment during the broadcast, the lack of evidence that Al-Waha repeatedly committed such violations and will likely continue to violate the law, and EJJ's affidavit in support of damages, the court finds that a statutory award of $15,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II) and (ii) is warranted in this case.

219 F.Supp.2d at 777.

Accordingly, Plaintiff asks this Court to find in this case that the enhanced statutory minimum ($10,000.00) is a necessary baseline amount this Court should consider adopting to effectively deter parties such as the Defendants from stealing proprietary programming.

However, this Court observes that the *Al-Waha Enterprises* case was not a default, but was decided on a motion for summary judgement, where the defendant had an opportunity to defend itself. Also, the court only awarded triple the minimum statutory damages, and did so in a conclusory fashion, employing an analysis that would result in an

enhanced award for virtually every violation. This Court concludes that it is not obliged to accept Plaintiff's argument for enhanced statutory damages based on the *Al-Waha Enterprises* case.

Next, Plaintiff requests enhanced damages pursuant to Sections 553(c)(3)(B) and 605(e)(3)(C)(ii). Section 605(e)(3)(C)(ii) advises awarding up to $100,000.00 where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . ." Again, this Court notes that section 605 applies to illegal interception of satellite broadcasts and Plaintiff's own investigator testified that Lara's Bar had "no satellite dish," so section 605 does not apply here. Section 553(c)(3)(B) will award an aggrieved Plaintiff up to $50,000.00. Willfulness has been defined by the Supreme Court as "disregard for the governing statute and an indifference for its requirements.." *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)).

To determine intent for commercial or private gain, 9th Circuit courts often look for evidence of a cover charge, increased price of food/drinks, advertisements, or the number of patrons in attendance. *Entertainment By J&J, Inc. v. Perez,* 2000 WL 890819 (N.D. Cal. 2000)(Judge Henderson); *Kingvision Pay-Per-View, Ltd. v. Arias,* 2000 WL 20973 (N.D. Cal. 2000)(Judge Illston). There is no such evidence in this case. Plaintiff"s investigator found no evidence of a cover charge, increased prices for food or drink, or advertisements. All he says is that there were approximately 14 people in the bar when he arrived at 7:45 p.m., during Round Six of the fight being broadcast as part of Plaintiff's program and 16 when he left, three minutes later, at 7:48. There is no indication whether this was more than the usual number for that night of the week.

Nevertheless, Plaintiff asks this Court to find that such requirements are largely "illogical and inconsistent with the very nature of the infringing activity," and that commercial signal pirates are looking to avoid, not attract, detection for their unlawful acts, and have no financial investment in the programming they are unlawfully exhibiting. This Court finds this contention to be absurd; if Defendants were seeking to enhance their profits by stealing Plaintiffs' broadcast, than surely they would have advertised it.

Plaintiff asks this Court to look instead at the act of interception itself rather than promotion of the event in calculating appropriate damages. For instance in *Al-Waha*, the plaintiff did not provide evidence of a cover charge or advertisements of the subject fight. 219 F. Supp. 2d at 776. Nevertheless, the court awarded enhanced damages to the aggrieved party plaintiff. *Id.* at 777. "Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [the Defendants] . . . to be willful and for the purposes of direct or indirect commercial advantage or private financial gain." *Id.* at 776. Plaintiff again cites the *Al-Waha Enterprises* case for the proposition that enhanced statutory damages of anywhere from $30,000 to $100,000 should be awarded in this case.

The Court remains unconvinced that this would be appropriate, especially in the context of a default, where there is no evidence of increased profit to Defendants resulting from the unlawful broadcast of Plaintiff's Program, no indication of wilfulness, no evidence of actual damage to Plaintiff, other than the $1,200.00 license fee for the Program it would have received from an establishment of Defendants' size.

Accordingly, this Court concludes that enhanced statutory damages should not be awarded in the instant action. Plaintiff has met its burden of proof of showing, by affidavit of its investigator, that Defendants did unlawfully broadcast Plaintiff's program on one occasion, constituting a single violation of the pertinent statutes. However, Plaintiff fails to present any convincing law or evidence which would justify an award of enhanced damages.

**III.     Conclusion**

Accordingly, this Court recommends that Judgment be entered for Plaintiff in the amount of $1,200.00, representing statutory damages for a single violation of 47 U.S.C. §553(c)(3)(A)(ii). In addition, Plaintiff shall submit a declaration justifying its request for an award of a specific minimal amount for attorney's fees and costs, pursuant to 47 U.S.C. §553(2)(C).

1
2          Respectfully submitted,
3   DATED: September 14, 2009
4
5                                                    _____
                                                     JAMES LARSON
6                                                    United States Magistrate Judge
7
8
9
10
11
12  G:\JLALL\CHAMBERS\CASES\CIV-REF\09-1488\R&R.wpd
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California